# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SYEED BRIGGS, | : |
|     Plaintiff, | : CIVIL ACTION |
| v. | : |
| JAMES GODBY, JEFF McGEE, MONTGOMERY COUNTY, PA, LOWER MERION TOWNSHIP, PA, JOHN DOE, PLYMOUTH MEETING TOWNSHIP LAW ENFORCEMENT OFFICERS, All Jointly and Severally Liable in Both Individual and Official Capacities, | : NO. 08-5239 |
|     Defendants. | : |

## MEMORANDUM

BUCKWALTER, S.J.                                                                                                             December 10, 2009

Currently pending before the Court are Defendant Montgomery County's Renewed Motion to Dismiss Plaintiff's Complaint and Plaintiff's Responding Motion for Default Judgment. For the following reasons, Plaintiff's Motion is denied, Defendant's Motion is granted and the Complaint against Defendant Montgomery County is dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

According to the facts set forth in the Complaint, on October 25, 2006, a Joint Task Force of FBI agents, Philadelphia police officers, Plymouth Meeting police officers, and Lower Merion police officers conducted a search of 243 West Tulpehocken Street, Apartment B 308, Philadelphia, Pennsylvania, 19144. (Compl. ¶ 11.) The apartment was under the dominion and control of Plaintiff Syeed Briggs and Plaintiff was present and sleeping in his bedroom upon the

arrival of the police. (Id. ¶¶ 12-13, 15.) The police kicked the door in, immediately seized and restrained Plaintiff in handcuffs, and brought Plaintiff from his bedroom to his living room. (Id. ¶ 14.) When Plaintiff questioned why the police had entered as they did, he was told that they were conducting an investigation of two bank robberies, one in Plymouth Meeting and one in King of Prussia. (Id. ¶ 16.) The police asked Plaintiff who owned the apartment, and he indicated that he did. (Id. ¶ 17.) Although Plaintiff was told he was not under arrest, the police failed to explain why he was being handcuffed. (Id. ¶¶ 18-19.)

Subsequently, Defendants James Godby, Jeff McGee, and John Doe asked Plaintiff's permission to search the apartment, and Plaintiff told them to obtain the proper authority. (Id. ¶¶ 20-21.) The three Defendant officers responded that because they believed he was involved in the alleged robberies, they would not waste their time seeking a warrant.[1] (Id. ¶ 22.) They further told Plaintiff that if they found nothing inculpatory, he would be free to go and the matter would be resolved. (Id. ¶ 23.) Thereafter, Defendants Godby, McGee, Doe, and the rest of the police conducted a search over Plaintiff's objection. (Id. ¶ 24.) During the search, the police seized several items from the premises, including: (1) $2,751 in currency; (2) two automobiles; (3) two cell phones; (4) a small quantity of marijuana; and (5) "several other innocuous items." (Id. ¶ 25.) Defendants McGee and Godby told Plaintiff that some of the seized items implicated

---

[1] Notably, in his Omnibus Pre-Trial Motion, filed during his criminal proceedings, Plaintiff conceded that the officers who conducted the search of his home on October 25, 2006 had obtained a search warrant from the United States District Court. He moved to suppressed the evidence seized during that search (1) on the basis of the "knock and announce" rule and (2) because the affidavit submitted in connection with the search warrant application did not contain sufficient probable cause. See Omnibus Pre-Trial Motion, United States v. Briggs, Crim. A. No. 06-715, 2-3 (E.D. Pa. Oct. 12, 2007). For purposes of the pending Motion, however, the Court accepts the facts as set forth in Plaintiff's Complaint.

him in the crime and, two hours later, he was officially placed under arrest. (Id. ¶¶ 26-27.) Plaintiff was then transported by Defendants Godby, McGee, and Doe out of Philadelphia County to Plymouth Meeting. (Id. ¶ 28.) Subsequently, he was transferred to Montgomery County Correctional Facility, where he again complained that his property was illegally seized, his residence illegally searched, and his person illegally restrained. (Id. ¶ 29.)

The state charges were dropped on February 12, 2007. (Id. ¶ 30.) Federal charges for the bank robberies, however, were fully prosecuted in the United States District Court for the Eastern District of Pennsylvania. (Compl. ¶ 31.) Plaintiff moved to suppress the evidence obtained during the October 25, 2006 search of his home and, following a full suppression hearing, the trial court declined to grant the requested relief. Order, United States v. Briggs, Crim. A. No. 06-715 (E.D. Pa. Nov. 1, 2007). Ultimately, Plaintiff was convicted and is currently serving a 300-month sentence for carrying and using a firearm during a crime of violence, armed bank robbery, and conspiracy to commit armed bank robbery. Judgment, United States v. Briggs, Crim. A. No. 06-715 (E.D. Pa. Mar. 26, 2008). On October 1, 2009, the United Court of Appeals for the Third Circuit denied Plaintiff's appeal and affirmed the lower court's judgment. Judgment, United States v. Briggs, No. 08-1956 (3d Cir. Oct. 1, 2009). Although Plaintiff petitioned for rehearing *en banc*, the Third Circuit denied the petition by way of order issued October 26, 2009. Order, United States v. Briggs, No. 08-1956 (3d Cir. Oct. 26, 2009).

Plaintiff filed a Complaint in this Court on November 3, 2008, setting forth the following claims: (1) unreasonable search and seizure in violation of the Fourth Amendment against Defendants Godby, McGee, and Doe; and (2) vicarious responsibility against Defendants Plymouth Meeting Township, Lower Merion Township, and Montgomery County for their

omission and acquiescence into the unlawful conduct of their officers. (Compl. ¶¶ 38-42.) On January 6, 2009, Defendants Lower Merion Township, Plymouth Township, and Detective Jeff McGee filed a motion to dismiss Plaintiff's Complaint. In light of Plaintiff's failure to respond to that motion, this Court entered an order, dated February 2, 2009, dismissing the Complaint against the moving Defendants with prejudice. Order, Briggs v. Montgomery County, Civ. A. No. 08-5239 (E.D. Pa. Feb. 2, 2009).

Subsequently, on February 5, 2009, Defendant Montgomery County moved to dismiss Plaintiff's Complaint based on the same arguments raised in the Motion to Dismiss filed by the other Defendants. On February 11, 2009, however, Plaintiff appealed the Court's February 2, 2009 Order. In light of the pending appeal, this Court denied Montgomery County's Motion to Dismiss "without prejudice to renewal upon disposition of the aforesaid appeal." Order, Briggs v. Montgomery County, Civ. A. No. 08-5239 (E.D. Pa. Mar. 4, 2009). On August 12, 2009, the United States Court of Appeals for the Third Circuit deemed that Order not appealable and dismissed Plaintiff's then pending appeal. Thereafter, Defendant Montgomery County filed its Renewed Motion to Dismiss, Plaintiff submitted a timely response together with a Request for Entry of Default, and Montgomery County filed a supplemental brief in support.

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

4

formulaic recitation of the elements of a cause of action will not do." Id. at 555. Following the basic dictates of Twombly, the Supreme Court, in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but not shown an entitlement to relief. Id.; see also McTernan v. City of York, 577 F.3d 521, 530-31 (3d Cir. 2009).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. DeFebo v. Andersen Windows, Inc., No. CIV.A.99-2993, 2009 WL 4268553, at *4 (E.D. Pa. Nov. 3, 2009); Spence v. Brownsville Area Sch. Dist., No. CIV.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. Jul. 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true

and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III. DISCUSSION

In support of its Renewed Motion to Dismiss, Defendant Montgomery County (the "County") adopts and incorporates the arguments made in the January 6, 2009 motion by Defendants Lower Merion Township, Plymouth Township, and Detective Jeff McGee. Specifically, the County sets forth the following claims: (1) the Complaint is barred by the statute of limitations; (2) Plaintiff's claims are barred by collateral estoppel; (3) Plaintiff's claims are barred by the Supreme Court decision in by Heck v. Humphrey, 512 U.S. 477 (1994); and (4) Plaintiff failed to sufficiently plead a Monell claim.[2] In his Responsive Motion for Default Judgment, Plaintiff contends that the County has "defaulted in this action by not timely filing a response pleading in this action prior to the entry of judgment in this case pursuant to F.R.Civ.P Rule 55." (Pl.'s Resp. Mot. Dismiss ¶ 8.) The Court addresses these various arguments individually.

### A. Whether the County Has Defaulted by Not Timely Filling a Response

In a preemptive strike against the entire Motion to Dismiss, Plaintiff asserts that the County failed to timely file a responsive pleading in this action prior to the entry of judgment. In turn, because the time limit for responding to the Complaint, set forth in Federal Rule of Civil

---

[2] Although the prior Motion to Dismiss also raised other arguments in support of dismissal, those arguments are inapplicable to the present Motion.

Procedure 12(a), has now expired, Plaintiff requests that default judgment be entered against Defendant Montgomery County. (Pl's Request for Entry of Default ¶¶ 3-5.)

Federal Rule of Civil Procedure 12(a)(1)(A) states that a defendant must serve an answer: "(i) within 21 days after being served with the summons and complaint; or (ii) if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States." FED. R. CIV. P. 12(a)(1)(A). Rule 55 goes on to indicate that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a).

However, "[t]imely service of a Rule 12(b)(6) motion by a defendant alters the time for filing an answer." Tauro v. Allegheny County, No. CIV.A.09-354, 2009 WL 2382683, at *1 (W.D. Pa. Jul. 31, 2009) (citing FED. R. CIV. P. 12(a)(4)); see also Brown v. Interbay Fund LLC, 198 Fed. App'x 223, 225 (3d Cir. 2006) (holding that "the time period for filing an answer is altered when a defendant files a motion under Rule 12"). Generally, "if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action." FED. R. CIV. P. 12(a)(4)(A).

In the present case, Plaintiff requested waiver of service on December 5, 2008, the Court mailed the waiver form to the County on December 8, 2008, and the County acquiesced to such waiver on December 12, 2008. Request for Waiver of Service, Briggs v. Montgomery County, Civ. A. No. 08-5239 (E.D. Pa. Dec. 5, 2008); Notice of a Lawsuit and Request to Waive Service of a Summons, Briggs v. Montgomery County, Civ. A. No. 08-5239 (E.D. Pa. Dec. 8, 2008);

7

Waiver of Service, <u>Briggs v. Montgomery County</u>, Civ. A. No. 08-5239 (E.D. Pa. Dec. 12, 2008). Pursuant to Fed. R. Civ. P. 12(a)(1)(A)(ii), the County then had sixty days from December 8, 2008 – i.e., until February 6, 2009 – to file either an answer or a Rule 12 motion.[3] On February 5, 2009, the County filed a timely motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). As described above, this filing tolled the limitations period for when the County's answer was due. On March 4, 2009, the Court denied the motion to dismiss, but did so without prejudice to the County's renewal of that motion following the resolution of Plaintiff's pending appeal to the Third Circuit. Accordingly, the Order did not operate as a denial of the motion that triggered the ten-day period for filing an Answer under Rule 12(a)(4)(A).

Ultimately, Plaintiff's appeal was dismissed on August 12, 2009. While Defendant Montgomery County waited seventy-one days before renewing its motion to dismiss, nothing in the March 4th order delineated the appropriate time for renewal and Plaintiff never filed any motion for default in the intervening time period. In light of the Renewed Motion to Dismiss, the County's Answer is, to date, not yet due. Therefore, the Court must deny Plaintiff's Request for Entry of Default against Defendant Montgomery County.[4]

---

[3] The Notice of a Lawsuit and Request to Waive Service of a Summons mailed by the District Court expressly gave the County sixty days from December 8, 2008 to file and serve an answer or motion under Fed. R. Civ. P. 12.

[4] Plaintiff also brings his Request for Default against Defendant James Godby since Godby has never filed either a motion or an answer in response to the Complaint. The Court notes, however, that Defendant Godby has yet to be properly served with the Complaint. Indeed, the initial summons to Defendant Godby issued by Plaintiff was returned on March 12, 2009, with a notation by the Plymouth Police Department that no James Godby works or had ever worked there.

Federal Rule of Civil Procedure 4(m) provides, in relevant part, that "[i]f a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order

B.      **Whether the Complaint is Barred by the Statute of Limitations**

The first argument raised by the County in its renewed Motion to Dismiss alleges that Plaintiff's claims – all of which are raised pursuant to 42 U.S.C. § 1983 – are barred by the applicable statute of limitations. Upon consideration of the controlling jurisprudence, this Court disagrees.

Because section 1983 does not contain a statute of limitations, courts look to 42 U.S.C. § 1988, which requires use of the statute of limitations for the state where the federal court sits, unless its application would conflict with the Constitution or with federal law. Lake v. Arnold, 232 F.3d 360, 368 (3d Cir. 2000). The Third Circuit has repeatedly held that a state's statute of limitations for personal injury actions applies to all actions brought under 42 U.S.C. § 1983. Padilla v. Twp. of Cherry Hill, 110 Fed. App'x 272, 276 (3d Cir. 2004); Montgomery v. DeSimone, 159 F.3d 120, 126 n.4 (3d Cir. 1998). As Pennsylvania's limitations period for personal injury actions is two years, that same two-year period is applicable to Plaintiff's section 1983 claims. See PA. CONS. STAT. § 5524 (2004).

In this case, the events giving rise to Plaintiff's Complaint occurred on October 25, 2006, giving him until October 25, 2008 to bring suit. The Complaint, however, was not filed until November 3, 2008 – nine days after the expiration of the statute of limitations. At first blush, the Complaint thus appears untimely and should be dismissed.

Such a ruling, however, would disregard the well-established "prisoner mailbox rule." In

---

that service be made within a specified time." FED. R. CIV. P. 4(m). Accordingly, this Memorandum shall serve as notice to Plaintiff that failure to properly serve Defendant Godby within thirty days from the date of the Order accompanying this Memorandum shall result in dismissal of the Complaint against him without prejudice.

Houston v. Lack, 487 U.S. 266 (1988), the United States Supreme Court crafted the prisoner mailbox rule, providing that the date on which a pro se prisoner transmits documents to prison authorities for mailing is considered the actual filing date. Id. at 275. Courts within the Third Circuit have repeatedly applied this mailbox rule to cases where the pro se prisoner signed and/or dated his filling within the proper time limit, but it was not docketed until after the deadline. See, e.g., Pendergrass v. Gray, No. CIV.A.06-2247, 2006 WL 3165007, at *3 (E.D. Pa. Oct. 30, 2006) (citing Askew v. Jones, No. CIV.A.04-3900, 160 Fed. App'x 140 (3d Cir. Dec. 13, 2005)); Taylor v. Naylor, No. CIV.04-1826, 2006 WL 1134940, at *3 (W.D. Pa. Apr. 6, 2006); Sabella v. Troutner, No. CIV.A.05-0427, 2006 WL 229053, at *4 (M.D. Pa. Jan. 31, 2006)).

While the Complaint in this case was not officially docketed by the Court until November 3, 2008, it was signed and dated by Plaintiff on October 22, 2008. Pursuant to the mandates of the prisoner mailbox rule, October 22, 2008 thus constituted the legal filing date of his lawsuit. The Complaint was therefore timely filed prior to the October 25, 2008 expiration of the statute of limitations.

### C. Whether Plaintiff's Fourth Amendment Claims are Barred by Collateral Estoppel

Defendant next claims that Plaintiff already argued – albeit unsuccessfully – the merits of his Fourth Amendment search and seizure claim during his criminal proceedings. Given that Plaintiff has had the opportunity to litigate this issue, Defendant asserts that he is now barred by Supreme Court precedent from bringing it under the guise of a section 1983 action.

"The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel." Allen v. McCurry, 449 U.S. 90, 94 (1980). Under collateral estoppel, "once

a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Id. Whether in federal or state courts, "res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Id.; Davis v. U.S. Steel Supply, Div. of U.S. Steel Corp., 688 F.2d 166, 174 (3d Cir. 1982). The United States Supreme Court has specifically recognized that collateral estoppel applies broadly to section 1983 claims. Allen, 449 U.S. at 102-03; see also Ingram v. Lupas, No. CIV.A.09-1688, 2009 WL 4048786, at *2 (3d Cir. Nov. 24, 2009) (noting that "[i]t is well established that principles of collateral estoppel are fully applicable to civil rights actions brought under § 1983.").

Well-settled jurisprudence provides that application of collateral estoppel has four essential elements: "(1) an issue decided in a prior action is identical to the one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action." Jones v. U.S. Parcel Serv., 214 F.3d 402, 405-06 (3d Cir. 2000). The Third Circuit has found these elements satisfied and thus estopped an individual from litigating Fourth Amendment claims where the same issues were previously litigated in a prior criminal proceeding. James v. Heritage Valley Fed. Credit Union, 197 Fed. App'x 102, 105 (3d Cir. 2006) ("[a] finding in a prior criminal proceeding may estop an individual from litigating the same issue in a subsequent civil proceeding."), cert. denied, 550 U.S. 939 (2007). Federal courts within this Circuit have repeatedly made similar findings. See, e.g., Crawford v. Frimel, No.

11

CIV.A.07-3452, 2009 WL 1904613, at *2 (3d Cir. Jul. 2, 2009) (prior determination of probable cause issue during suppression hearing in criminal proceedings barred subsequent civil suit raising the probable cause issue); Berry v. Chaves, No. CIV.A.02-893, 2003 WL 21497557, at *1-2 (E.D. Pa. Jun. 30, 2003) (holding that plaintiff's section 1983 claim that searches of his residence and car were unconstitutional were barred because the constitutionality of those actions were fully considered and upheld during a suppression motion in plaintiff's underlying federal criminal proceedings); see also Doswell v. City of Pittsburgh, No. CIV.A.07-0761, 2009 WL 1734199, at *6 (W.D. Pa. Jun. 16, 2009) (finding that collateral estoppel barred plaintiff's section 1983 claim for malicious prosecution based on an unduly suggestive photo array where, during his criminal trial, the state court considered and denied a motion to suppress that photo array); Ashford v. Skiles, 837 F. Supp. 108, 112 (E.D. Pa. 1993) (holding that a finding of probable cause made in a state court criminal suppression hearing, which afforded the parties a full and fair opportunity to litigate the issue, may be an "appropriate basis" for application of collateral estoppel to a section 1983 claim).

In the case presently before the Court, the Fourth Amendment issue meets all of the necessary criteria for application of collateral estoppel. The core of Plaintiff's Complaint alleges that he was subject to an unreasonable search of his premises and an unreasonable seizure of his person and property under the Fourth Amendment. (Compl. ¶¶ 32-34, 38-40.) During his underlying criminal proceedings, Plaintiff, who was fully represented by competent counsel, filed an Omnibus Pre-Trial Motion that sought, in part, suppression of all evidence obtained as a result of the search of his apartment. Specifically, he challenged the affidavit submitted in support of the search warrant and contended that "no probable cause existed to believe that the defendant's

12

apartment or automobile would contain evidence of criminal activity." Mem. Supp. Omnibus Pre-Trial Motion, United States v. Briggs, Crim. A. No. 06-715, 2 (E.D. Pa. Oct. 12, 2007). Following additional briefing by the parties and a full suppression hearing, the Honorable Jan E. DuBois denied the motion and declined to suppress any of the evidence seized during the challenged search. Plaintiff was convicted of the charged crimes and appealed to the United States Court of Appeals for the Third Circuit, again raising the Fourth Amendment issues. The Third Circuit affirmed the trial court's judgment on October 1, 2009, and denied Plaintiff's Petition for Rehearing *En Banc* on October 26, 2009. Having had a full and fair opportunity to litigate this issue to a final judgment,[5] Plaintiff is now collaterally estopped from re-raising the

---

[5] As the denial of rehearing was issued by the Third Circuit on October 26, 2009, Plaintiff has until January 25, 2010 to file a petition for *certiorari* with the United States Supreme Court. U.S. SUP. CT. R. 13(1),(3) (giving ninety days to file a petition for writ of *certiorari* from the date of denial of rehearing). Although the second element of the collateral estoppel test requires that the prior action resulted in a final judgment on the merits, Plaintiff's available appellate process has no impact in this case. The Third Circuit has conclusively held that collateral estoppel "does not require the entry of a judgment, final in the sense of being appealable." In re Brown, 951 F.2d 564, 569 (3d Cir. 1991). Rather, "'final judgment[] includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.'" Id. (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982)). The Third Circuit went on to remark that "insistence on a final and fully appealed judgment can involve needless duplication and expense to decide the same issue or, alternatively, undue delay in a second action while the first action is brought to a complete finish." Id. (citing RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. g). Thus, the Court noted that "for purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded preclusive effect." Id. (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 13); see also Henglein v. Colt Indus. Operating Corp., 260 F.3d 201, 210 (3d Cir. 2001) (citing Brown with approval). It is generally accepted that "denial of a suppression motion followed by a conviction is a final judgment for collateral estoppel purposes." Berry v. Chaves, No. CIV.A.02-893, 2003 WL 21497557, at *2 (E.D. Pa. Jun. 30, 2003).

In this case, Plaintiff has had the opportunity to litigate his Fourth Amendment claims before the United States District Court, on appeal to the Third Circuit, and in a petition for rehearing *en banc*. On each occasion, the reviewing court has issued a final judgment sufficiently firm to be accorded preclusive effect.

issue via a section 1983 civil complaint. Accordingly, the Court dismisses Plaintiff's Fourth Amendment claim.[6]

### D. Whether Plaintiff's *Monell* Claims Must Be Dismissed

In the seminal case of Monell v. Dept, of Soc. Serv., 436 U.S. 658 (1978), the United States Supreme Court confirmed that "Congress *did* intend municipalities and other local government units to be included among those persons to whom §1983 applies," but emphasized that "a municipality cannot be held liable under §1983 on a *respondeat superior* theory." Id. at 690-91. To establish section 1983 liability on such a governing body, the plaintiff must identify either a "policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers," or "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." Id. The Third Circuit has explained that policy or custom may be

---

[6] Defendant also contends that Plaintiff's Fourth Amendment claims are barred by the Supreme Court decision in Heck v. Humphrey, 512 U.S. 477 (1994), wherein the United States Supreme Court rejected section 1983 as a vehicle to challenge the lawfulness of an existing criminal judgment. 512 U.S. at 486-87 (footnote omitted). Interpreting Heck, however, the Third Circuit has noted that a Fourth Amendment claim could be brought under section 1983, even without favorable termination of the related criminal conviction, if the district court determines that success on the claim would not necessarily imply the invalidity of the conviction. Gibson v. Superintendent of N.J. Dept. of Law and Pub. Safety, 411 F.3d 427, 435-39 (2005), cert. denied, 126 S. Ct. 1571 (2006). Where the district court finds that success on the section 1983 claim necessarily implies the invalidity of the conviction, the cause of action is deferred until the conviction is overturned pursuant to Heck. White v. Prob. Office, No. CIV.A.07-951, 2008 WL 3837045, at *5 (M.D. Pa. Aug. 13, 2008). "Heck does not foreclose suits that attack a limited quantum of the evidence supporting the plaintiff's conviction if the remaining non-challenged evidence is alone sufficient to sustain the conviction." Id. On the state of the record now before this Court, with only the allegations of the complaint and the parties' differing arguments as to whether the evidence seized during the challenged search was "inconsequential" in determining his guilt, the Court cannot make this determination. In turn, the Court cannot say, at this time, whether Plaintiff's probable cause claims are barred by Heck.

established (1) "[w]hen a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict" or (2) through a "course of conduct . . .when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (internal quotations and quotation marks omitted).

Plaintiff's municipal liability claim alleges that Defendant Montgomery County neglected to properly supervise its officers and failed to ensure that they performed in a constitutionally appropriate manner. This claim, however, cannot withstand the Motion to Dismiss. The Third Circuit has expressly held that without an underlying constitutional violation, there can be no municipal liability. Brown v. Commonwealth of Pa., 318 F.3d 473, 482 (3d Cir. 2003); Domenech v. City of Philadelphia, No. CIV.A.06-1325, 2009 WL 1109316, at *15-16 (E.D. Pa. Apr. 23, 2009). As set forth in detail above, Plaintiff cannot, as the result of collateral estoppel, allege any cognizable violation of his Fourth Amendment rights. Therefore, his Monell claim is dismissed.

## IV.    CONCLUSION

In sum, the Court finds that collateral estoppel bars Plaintiff from relitigating his Fourth Amendment claim. Absent any underlying constitutional violation, Plaintiff also cannot pursue any claim of municipal liability. Accordingly, the Court grants Defendant Montgomery County's Renewed Motion to Dismiss and dismisses the Complaint against it.

An appropriate order follows.